UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

Dino Victor Clay,

                              Plaintiff,

      v.

Scott Riordan *et al.*,

                              Defendants.

**Report and Recommendation**

18-CV-933 (LJV)

―――――――――――――――――――――――――――

**I.     INTRODUCTION**

On November 20, 2017, sovereign citizen[1] Dino Victor Clay was driving on Delaware Road in Kenmore, New York with an expired driver's license. When he failed to stop at a stop sign, Kenmore Police pulled him over. After plaintiff apparently told the officers inquiring about his driver's license that "he is not a licensee under any board or commission and is not required to be a licensee" (Dkt. No. 1 at 10), the officers took him into custody on an outstanding warrant, issued several tickets under New York's Vehicle and Traffic Law, and impounded his vehicle. In response, plaintiff attempted to remove his state criminal matters to federal court and filed this suit against every police officer, prosecutor, judge, and tow-truck operator who had anything to do with him. Plaintiff also has sued the Mayor of the Village of Kenmore. While asserting Fourth Amendment and other violations by way of 42 U.S.C. § 1983, plaintiff also has stated explicitly that he wants each defendant incarcerated (*id.* at 6) and that the Constitution of the State of Minnesota bolsters his arguments (*id.* at 19). Plaintiff signed the complaint and many of the papers attached to it with

―――――――――――――――――――

[1] "The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 (2d Cir. 2013) (summary order).

references to the Uniform Commercial Code, to trusts in his name, and to his identity as "a natural flesh and blood man," all indicia of sovereign-citizen filings.

Defendants Eugene Adams, Peter Breitnauer, Kenmore Police Department, Patrick Mang, Darryl A. Purucker, Scott Riordan, Village of Kenmore, and Kevin Wiles (the "Kenmore Defendants" collectively) now have filed a motion to dismiss under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 12.)  Separately, defendant John's Towing has filed its own motion to dismiss under the same rules.  (Dkt. No. 20.)  All of the defendants have taken considerable time addressing plaintiff's numerous claims, but the predominant themes in the two motions are that municipal officials cannot be sued in an official capacity; that absolute and qualified immunity protect the Kenmore Defendants against liability for discharging their duties; and that probable cause existed at multiple levels to justify the events of November 20, 2017, thereby negating any claims about false arrest, imprisonment, or prosecution.  Plaintiff has responded with papers that bear characteristics of sovereign-citizen arguments: a jumble of arguments under federal and state law including repeated references to N.Y. C.P.L.R. ("CPLR") 3211(a)(7), a state rule for motions to dismiss having nothing to do with this case; copies of quotes taken out of context from federal and state cases going back to the 19th century; and an argument that the Kenmore Defendants' counsel might not be an attorney because he has failed to prove that he has a law license (Dkt. No. 16-1 at 5).

The Court has deemed defendants' motions submitted on papers under Rule 78(b).  For the reasons below, the Court respectfully recommends granting defendants' motions.

## II.   BACKGROUND

This case concerns events related to a traffic stop that occurred in Kenmore, New York on November 20, 2017.  That evening, according to the traffic tickets issued, plaintiff was driving just

after 6:00 PM on Delaware Road. Defendant Purucker, a Kenmore Police officer, pulled over plaintiff for failure to stop at a stop sign. Purucker asked to see plaintiff's driver's license, but plaintiff responded that "he is not a licensee under any board or commission and is not required to be a licensee." (Dkt. No. 1 at 10.) Plaintiff's response prompted Purucker to investigate further, and he found that plaintiff's driver's license was expired and had an outdated address. Purucker issued several citations under New York's Vehicle and Traffic Law: Failure to notify the Department of Motor Vehicles of a change of address; unlicensed operation of a motor vehicle; second-degree aggravated unlicensed operation; failure to stop at a stop sign; and failure to surrender[2] a license or registration after revocation. (*Id.* at 64–68.) According to the complaint, Purucker also learned that plaintiff had an outstanding warrant against him. (*Id.* at 10.) Plaintiff was taken into custody, and defendant John's Towing arranged to tow plaintiff's vehicle to an impound lot. What became of the unspecified outstanding warrant is not clear from the record. Of the five traffic tickets issued, four were dismissed. On August 21, 2018, plaintiff pled guilty to the charge of second-degree aggravated unlicensed operation. Plaintiff agreed to pay a $500 fine and a $93 surcharge as part of the guilty plea. (Dkt. No. 12-1 at 10.)

Plaintiff commenced this case by filing his complaint on August 21, 2018. (Dkt. No. 1.) The complaint contains numerous claims and allegations including an illegal traffic stop; lack of jurisdiction to arrest; falsification of government documents; false imprisonment; assault; excessive bail; and a violation of speedy-trial requirements under state criminal procedure law. Defendant demands relief that includes incarceration of the individual defendants (*id.* at 6); "diversification" of the Kenmore Police Department (*id.*); "diversification of all aspects of Village of Kenmore living"

---

[2] The ticket for this misdemeanor charge lists "3187" as the section violated but likely is a typographical error. The charge appears to correspond to N.Y. Veh. & Traf. Law § 318(7).

3

(*id.* at 7); liquidation of defendant John's Towing (*id.*); and punitive damages.  Plaintiff's authorities for his allegations and demands for relief include *Den ex dem. Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272 (1855).  (Dkt. No. 1 at 19.)  Plaintiff's signature for at least some of his papers employees the sovereign-citizen tactic of a "care of" address along with references to the Uniform Commercial Code with the phrase "all rights reserved."  (*Id.* at 18.)

Defendants filed the pending motions on January 24 and June 4, 2020.  Defendants seek dismissal for numerous reasons.  Any claims against any defendants in their official capacities have to fail for the same reason that claims against the Village of Kenmore would have to fail in the absence of sufficient allegations about official policies or customs.  The village prosecutor and justice had absolute immunity from suit while any police officers involved had qualified immunity for the discharge of their duties.  The towing company would have had qualified immunity as well.  Plaintiff has not alleged the personal involvement of a number of defendants and cannot allege *respondeat superior* liability.  Plaintiff's other claims either have not pled the necessary elements, including an absence of probable cause; or allege procedural violations of state law that cannot be remedied here.  Plaintiff opposes the motions with citations to CPLR 3211(a)(7); with an assertion that one or more defense counsel have not proven that they are licensed to practice law (Dkt. No. 16-1 at 5; Dkt. No. 23 at 3); and with citations to a gallimaufry of 19th-century federal and state court cases (*e.g.*, *id.* at 4), a tactic used frequently by sovereign citizens.  *See, e.g., Buchholz-Kaestner v. Fitzgerald*, No. 616CV0604GTSTWD, 2017 WL 2345589, at *6 (N.D.N.Y. May 30, 2017) (collecting sovereign-citizen cases).

### III. DISCUSSION

#### A. *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

As a preliminary matter, the Court must decide whether to consider a number of documents that have become part of the record but lie outside of the amended complaint. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials. Generally, we do not look beyond facts stated on the face of the complaint, documents appended to

5

the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation and editorial marks and citation omitted). "Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks and citations omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough. In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Goel*, 820 F.3d at 559 (internal quotation and editorial marks and citations omitted).

Applying this standard, the Court can consider a few of the documents in the record. Plaintiff mentions in the complaint that the events of November 20, 2017 began with a traffic stop concerning a stop sign. All of the events that followed, and all of plaintiff's claims, flow from the traffic stop. Plaintiff himself attached copies of the traffic tickets to his complaint, and the dispositions for those tickets appear in defendants' motion papers as a certified governmental record. Accordingly, the traffic tickets and their dispositions are integral to the complaint, and the Court has considered them as part of its assessment of defendants' motions.

Moving to the substance of the complaint, defendants' motions, and plaintiff's responses, the Court has decided to simplify the analysis of the pending motions. Amidst all of the sovereign-citizen language that the parties either have advanced or are trying to address, three themes emerge that will resolve the motions in full: probable cause, immunities, and state-law violations. The Court will address each of these themes in turn.

### B. Probable Cause

At the core of the complaint, plaintiff asserts that he suffered numerous injuries to his rights as a result of an illegal seizure at his traffic stop on November 20, 2017. Central to all of plaintiff's allegations is the premise, sometimes stated explicitly and sometimes strongly implied, that the officers at the traffic stop lacked probable cause and that the Village of Kenmore prosecutor and judicial officer lacked probable cause to prosecute. Consequently, the Court will begin by assessing the issue of probable cause. *Cf., e.g., Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) ("We may exercise pendent jurisdiction to decide whether [the plaintiff] has alleged a constitutional violation at all before deciding whether [the defendant] is shielded by qualified immunity. Although it is no longer required, the probable cause inquiry may precede any inquiry into qualified immunity because there cannot be an allegation of a constitutional violation where probable cause justifies an arrest and prosecution. In this case, it is beneficial to first address whether [the defendant] had probable cause, because it best serves the interests of judicial economy.") (internal quotation marks and citations omitted); *see also id.* ("A court examines each piece of evidence and considers its probative value, and then looks to the totality of the circumstances to evaluate whether there was probable cause to arrest and prosecute the plaintiff. If probable cause existed, it presents a total defense to [the plaintiff's] actions for false arrest and malicious prosecution; [the officer] would be entitled to judgment as a matter of law.") (internal quotation and editorial marks and citations omitted).

"The test for probable cause is not reducible to precise definition or quantification. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence have no place in the probable-cause decision. All we have required is the kind of fair probability on which reasonable and prudent people, not legal technicians, act. In evaluating whether the State has met this practical and common-sensical standard, we have consistently looked to the totality of the circumstances. We have rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Florida v. Harris*, 568 U.S. 237, 133 S. Ct. 1050, 1055 (2013) (internal quotations and editorial marks and citations omitted). An assessment of probable cause becomes easier in the scenario of a direct observation of a legal infraction. "Probable cause arises when the police reasonably believe that an offense has been or is being committed . . . . When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Scopo*, 19 F.3d 777, 781–82 (2d Cir. 1994) (internal quotation marks and citations omitted), *quoted in Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (summary order). Additionally, New York law gives police officers statutory authority to arrest without a warrant when they directly observe a legal infraction. *See* N.Y. Crim. Proc. Law ("CPL") § 140.10(1)(a) (with exceptions not relevant here, "a police officer may arrest a person for [a]ny offense when he or she has reasonable cause to believe that such person has committed such offense in his or her presence").

Here, Purucker and the other police officer defendants had probable cause to arrest plaintiff and to charge him with all five violations that appeared in the traffic tickets. Purucker directly observed plaintiff driving on November 20, 2017. *Cf. Kraus v. Town of Friendship*, No. 17-CV-23V, 2017 WL 2403309, at *5 (W.D.N.Y. June 2, 2017) (dismissal required where officers had probable cause from direct observation of a traffic infraction), *report and recommendation adopted*, No. 17-CV-

8

23(LJV)(HBS), 2017 WL 4581580 (W.D.N.Y. Oct. 13, 2017).  On and through November 20, 2017, plaintiff had an expired driver's license, a fact that he openly admitted.  *Cf. McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005) (summary order) ("[A] police officer, upon ascertaining from a DMV check that a motorist's license has been suspended, is not required to make further inquiry as to guilty knowledge to make a lawful § 511 arrest."); *accord Demar v. Slusser*, No. 2:16-CV-36-JMC, 2017 WL 2124410, at *5 (D. Vt. May 16, 2017).  Plaintiff additionally asserted in the complaint that Purucker discovered an outstanding warrant during a records check.  *Cf. Nance v. New York City Police Dep't ex rel. McKay Chung*, No. 01CV424(JB)(JMA), 2003 WL 1955164, at *2 (E.D.N.Y. Apr. 24, 2003) (claim for false arrest dismissed for reasons including discovery of an outstanding arrest warrant).  Plaintiff did not plead any information suggesting that Purucker either invented the fact or intentionally overlooked information that he knew to be outdated or wrong.  From the observed infraction at the stop sign, the absence of a valid driver's license, and the outstanding warrant, Purucker and the other officers easily had probable cause to take plaintiff into custody and to impound his vehicle.  That plaintiff ultimately pled guilty to one of the five traffic infractions adds additional support to the presence of probable cause.  The presence of probable cause defeats any claims related to false arrest, false imprisonment, and false or malicious prosecution.  On this basis alone, defendants' motions should be granted.

### C. Immunities

Immunities provide a second reason to grant defendants' motions.  The first immunity to consider is judicial immunity.  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872).  This immunity applies even when the judge is accused of acting maliciously and corruptly,

and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967) (internal quotation marks and citation omitted). Here, defendant Riordan was involved in this case only in his capacity as a Kenmore Village Justice, presiding over traffic infractions that occurred within the Village of Kenmore. Defendant Wiles was involved only in his capacity as a court clerk for Kenmore Village Court. Plaintiff has not pled any information suggesting otherwise. *Cf. Ippolito v. Meisel*, 958 F. Supp. 155, 163 (S.D.N.Y. 1997) (judicial immunity for a town justice presiding over traffic tickets); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 533 (N.D.N.Y. 1997) (same); *see also Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (judicial immunity extends to court clerks for tasks that are an integral part of the judicial process) (citation omitted). In a similar way, defendant Adams has immunity for his role as the village prosecutor. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include, for purposes of this case, allegedly conspiring to present false evidence at a criminal trial."), *cited in Ramdath v. Sewah*, No. 111CV395LEKDRH, 2011 WL 13130998, at *2 (N.D.N.Y. May 12, 2011) (immunity for municipal attorney prosecuting traffic tickets). The police defendants have qualified immunity for taking action on a legal violation established by probable cause.[3] *See Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) ("It is well established that a police officer aware of facts creating

---

[3] Defendant John's Towing has asserted qualified immunity for itself because it towed plaintiff's vehicle at the direction of police. Towing companies, like other private defendants, generally are not entitled to qualified immunity but can avail themselves of summary judgment on the basis of a good-faith affirmative defense. *See Clement v. City of Glendale*, 518 F.3d 1090, 1096 (9th Cir. 2008); *accord Martinez v. Gonzales*, No. 13CV922 RHS/WPL, 2014 WL 12651266, at *3 (D.N.M. Apr. 16, 2014). In any event, analyzing this issue further will not be necessary because plaintiff has made no allegations against John's Towing independent of the Court's previous analysis of probable cause.

10

probable cause to suspect a prima facie violation of a criminal statute is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.") (internal quotation marks and citations omitted); *DeBruin v. Macedon Police Dep't*, No. 16-CV-6437L, 2020 WL 1980098, at *3 (W.D.N.Y. Apr. 27, 2020) (qualified immunity for police officers acting on probable cause at a traffic stop). Finally, though this point often is not described with the term immunity, municipalities cannot be sued under Section 1983 without some allegation of a problematic policy or practice. *See generally Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007). Plaintiff has not sufficiently alleged that the Village of Kenmore as an entity or that its mayor had any involvement in the relevant events at all, let alone that they implemented some policy or practice that affected the events of November 20, 2017.

Consequently, several forms of immunity provide an additional reason to dismiss all of the public-sector defendants from this case.

### D. State-Law Violations

A third and final reason to grant defendants' motions concerns the intersection of state procedural violations and federal constitutional rights. Simply put, "it is not the province of the Fourth Amendment to enforce state law." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). The same goes for other federal constitutional rights that could be pursued through Section 1983. Plaintiff has alleged several state procedural violations, including that defendant Riordan "made emotional decisions on the bench" (Dkt. No. 1 at 4); that the village prosecutor never declared trial readiness (*id.* at 6); and that several defendants permitted a speedy-trial violation to occur in violation of New York Criminal Procedure Law § 30.30 (*id.* at 14). Whether these violations occurred, and what to do about them, remains the province of the state-court system. *Cf. United States v. O'Neill*, No. 15-CR-151W, 2016 WL 6802644, at *11 (W.D.N.Y. Nov. 17, 2016) (state procedural violations did not

warrant federal suppression); *Lomasney v. Klimowicz*, No. 09-CV-00952A(F), 2014 WL 12837762, at *9 (W.D.N.Y. July 17, 2014) ("[W]hether the Domestic Violence Policy was followed is not relevant to whether the various arrests and prosecutions Plaintiff challenges were supported by the requisite probable cause to defeat Plaintiff's unlawful arrest and malicious prosecution claims.") (citations omitted), *report and recommendation adopted*, No. 09-CV-952-RJA-LGF, 2016 WL 7403813 (W.D.N.Y. Dec. 22, 2016).  Defendants' motions thus should be granted with respect to any state procedural violations that plaintiff has alleged.

## IV.    CONCLUSION

On November 20, 2017, plaintiff was driving without a valid driver's license and ran a stop sign.  Plaintiff admitted to lacking a valid driver's license and has not challenged the existence of an outstanding warrant on the night in question.  Plaintiff was duly arrested and prosecuted, and he pled guilty to one of the traffic infractions with which he was charged.  None of the defendants did anything out of the ordinary in response to obvious probable cause that plaintiff broke the law. Plaintiff's sovereign-citizen arguments and rhetoric are an unfortunate but unsuccessful distraction from what was a routine enforcement of New York's traffic laws.

For all of the foregoing reasons, the Court respectfully recommends granting defendants' pending motions to dismiss (Dkt. Nos. 12, 20) in their entirety.

## V.    OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any

objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted); *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set

its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.") (citation omitted).

  SO ORDERED.

           __/s Hugh B. Scott_____
           Hon. Hugh B. Scott
           United States Magistrate Judge

DATED: July 10, 2020